1

2

3

4                              UNITED STATES DISTRICT COURT

5                            NORTHERN DISTRICT OF CALIFORNIA

6

7    JON-PIERRE RATTIE,                          Case No.  22-cv-05061-RS   (LJC)

8                   Plaintiff,

9            v.                                  **ORDER GRANTING IN PART AND
                                                 DENYING IN PART THE PARTIES'
10   BALFOUR BEATTY                              REQUESTS FOR DISCOVERY RELIEF**
     INFRASTRUCTURE, INC.,
11                                               Re: ECF Nos. 41, 42
                   Defendant.

12

13          This case involves violations of the California Fair Employment and Housing Act and the

14   California Family Rights Act alleged by Plaintiff Jon-Pierre Rattie against his employer, Balfour

15   Beatty Infrastructure, Inc. (Balfour).  ECF No. 1 (Compl.) ¶¶ 1, 5-6.  Pending before the Court are

16   various disputes concerning fact discovery, which closed on July 25, 2023.[1]  ECF Nos. 41, 42.

17   The Court held a hearing on August 10, 2023, and ordered the parties to file supplemental briefing

18   and exhibits.  ECF Nos. 49, 53.  The Court has reviewed the supplemental materials (ECF Nos.

19   50, 51, 52, 54) and rules on each discovery dispute below.

20   **I.      BACKGROUND**

21          Mr. Rattie alleges the following.  Mr. Rattie was hired by Balfour as a Testing and

22   Commissioning Manager.  Compl. ¶ 5.  Balfour is located in San Mateo, California and Mr. Rattie

23   worked on projects including the Caltrain Peninsula Corridor Electrification Project (PCEP) of the

24   52-mile corridor between San Francisco and San Jose.  Id. ¶ 6.  On or about February 2019, Mr.

25   Rattie was diagnosed with Common Variable Immune Dysfunction (CVID), a condition that

26   requires him to receive specialized injections.  Id. ¶ 12.  Balfour accommodated Mr. Rattie for

27

28   _____
     [1] On August 8, 2023, the Court extended the fact discovery deadline to September 15, 2023, for
     the limited purpose of allowing Balfour to take the deposition of Irene Mendelsohn.  ECF No. 48.

_United States District Court_
_Northern District of California_

over two years by allowing him to work remotely beginning in 2020.  Id. ¶¶ 10, 16.  At some point during this time, Mr. Rattie relocated to Austin, Texas to receive his specialized injections.  Id. ¶¶ 14, 15.

On April 1, 2022, Mr. Rattie received a letter from Lorie Holte, Project Manager, requiring his physical return to work by April 18, 2022, related to his work on the Caltrain project.  Id. ¶ 9.  Mr. Rattie alleges that during the month of April, he also received "unprecedented and harassing emails and comments" from others at Balfour questioning his abilities to perform his job.  Id. ¶ 11.  Mr. Rattie submitted to Balfour an accommodation form and letter from his physician, Dr. Villacis, on April 27, 2022.  Id. ¶ 17.  According to Mr. Rattie, Jeff Rogers, Systems Integration Manager, and Troy Gjerde, Vice President of U.S. Civils, had a conversation about firing him on or about May 3, 2022.  Id. ¶¶ 18-20.  Mr. Rattie alleges that during the next several weeks, his meeting with the client was taken away and his internal meetings were unattended by the discipline leads and managers.  Id. ¶ 21.

Mr. Rattie alleges that he was placed on an involuntary leave of absence with pay effective May 13, 2022 "under the guise" of a misuse of Microsoft Teams.  Id. ¶ 23.  Balfour stopped Mr. Rattie's pay effective August 26, 2022.  Id. ¶ 25.  He remains employed with Balfour on unpaid Family Medical Leave Act (FMLA) leave.  ECF No. 43 at 4.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…" Fed. R. Civ. P. 26(b)(1).  A party that withholds otherwise discoverable material based on a privilege or the work product doctrine must "expressly make the claim…[and] describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(i)-(ii).

//

//

//

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

### III.    DISCUSSION

The Court addresses each of the parties' pending discovery disputes below.

### A.    Discovery Letter #1 – ECF No. 41 – Mr. Rattie's Responses to Certain Requests for Admissions

Balfour's demand for an order requiring Mr. Rattie to further respond to its Requests for Admissions (RFAs) is **GRANTED IN PART** and **DENIED IN PART**.  ECF No. 41.

Federal Rule of Civil Procedure 36 authorizes a party to serve "a written request to admit...the truth of any matters within the scope of Rule 26(b)(1) relating to...facts, the application of law to fact, or opinions about either."  Fed. R. Civ. P. 36(a)(1)(A).  RFAs "are sought, first, to facilitate proof with respect to issues that cannot be eliminated from the case, and second, to narrow the issues by eliminating those that can be."  Conlon v. United States, 474 F.3d 616, 622 (9th Cir. 2007).  "Rule 36(a) 'seeks to serve two important goals: truth-seeking in litigation and efficiency in dispensing justice.'"  Stokes v. Interline Brands, Inc., No. C-12-05527 JSW (DMR), 2013 WL 6056886, at *2 (N.D. Cal. Nov. 14, 2013) (citing Colon, 474 F.3d at 622).  The goal of RFAs is to "eliminate from the trial matters as to which there is no genuine dispute."  People of the State of Cal. v. The Jules Fribourg, 19 F.R.D. 432, 436 (N.D. Cal. 1955).  For this reason, "requests for admissions are not principally discovery devices."  Safeco of Am. v. Rawstron, 181 F.R.D. 441, 445 (C.D. Cal. 1998).  In addition, Rule 36(a) "is not to be used in an effort to harass the other side or in the hope that a party's adversary will simply concede essential elements."  Id. (citation omitted).  Disputes at the heart of the lawsuit are not an appropriate subject for an RFA. Stokes, 2013 WL 6056886, at *2 (citing Perez v. Miami-Dade Cnty., 297 F.3d 1255, 1268 (11th Cir. 2022) ("Issues obviously subject to dispute should be resolved at trial, not in a discovery motion to compel."))

#### 1.    RFA Nos. 1, 2, 3, 5, 6, 21, 23, 25, 26, and 27

Mr. Rattie has objected to RFA Nos. 1, 2, 3, 5, 6, 21, 23, 25, 26, and 27 based on his assertions that certain terms are vague and ambiguous, and along with these objections, he denied each RFA.  See ECF No. 41-1.  Neither Mr. Rattie's objections nor his supplemental brief (ECF No. 54) explains in detail why the identified terms are ambiguous.  Mr. Rattie also objected to

1    RFA Nos. 6, 21, and 23 on the grounds that the requests called for legal conclusions.

2          Certain RFAs are clearly designed to seek an admission of an issue that is in dispute, and

3    should be resolved at trial, rather than through discovery.  See Stokes, 2013 WL 6056886, at *2.

4    Accordingly, Balfour's request for further responses to RFA Nos. 1, 3, 5, 6, 21, 23, 25, 26, and 27

5    is **DENIED**.  Although Mr. Rattie failed to lodge proper objections based on purportedly

6    ambiguous terms, the RFAs were clearly impermissible in the first instance because they are

7    directed at issues that appear to be in dispute based on the record before this Court.  The RFAs

8    relate to the nature of the leave granted to Mr. Rattie, his requests to Balfour, his understanding of

9    the requirements of his position, and his motivations.  If it later becomes evident that Mr. Rattie

10   should have admitted to any of these requests, Balfour may move for sanctions.  See Fed. R. Civ.

11   P. 37(c)(2) ("[I]f the requesting party later proves . . . the matter true, the requesting party may

12   move that the party who failed to admit pay the reasonable expenses, including attorney's fees,

13   incurred in making that proof.")

14         With respect to RFA No. 2, this request does not appear to seek admission of an issue in

15   dispute.  The request asks that Mr. Rattie "[a]dmit that YOU were put on paid leave on May 13,

16   2022." ECF No. 41-1 at 3.  Mr. Rattie's own Complaint alleges, "Following his request for

17   accommodation, [Balfour] placed him on an involuntary leave of absence with pay effective May

18   13, 2022 . . ."  Compl. ¶ 23.  Mr. Rattie has not explained why the term "leave" is ambiguous.  Mr.

19   Rattie responded to RFA No. 2, denying it "as stated."  Balfour's request as to RFA No. 2 is

20   **GRANTED**, and Mr. Rattie shall further respond to Balfour, explaining its denial in detail.  This

21   further response is due within fourteen days of this order.

22                    **2.    RFA Nos. 10-12, 20, 22, and 24**

23         Balfour attached certain emails to RFA Nos. 10-12, 20, 22, and 24.  Mr. Rattie has offered

24   no authority for his position that it is unduly burdensome to respond to RFAs that incorporate

25   documents by reference.  That said, he did respond to each of these requests, denying the requests

26   "as stated".  Balfour, however, has requested that this Court order a further response.

27         Through RFA Nos. 10-12, Balfour seeks to have Mr. Rattie admit that certain emails were

28   intended to communicate with him to determine if he had work limitations that may require

4

accommodations.  Through RFA Nos. 20, 22, and 24, Balfour seeks to have Mr. Rattie admit that certain emails related to his job performance.  RFAs are not ordinarily designed for this type of discovery, whereas at depositions, a party may ask a witness about the meaning of a document.  Balfour's request for further responses to RFA Nos. 10-12, 20, 22, and 24 is **DENIED**.

> **B.    Discovery Letter #2 – ECF No. 42**

>> **1.    Text Messages**

Mr. Rattie seeks an order requiring Balfour to produce all responsive text messages from management witnesses Mike Vaz, Peter Webb, and Jeffrey Rogers.  ECF No. 42 at 2.  At the hearing, the Court was informed that the parties previously agreed on search terms to identify responsive communications.  The disputed issue is not the search terms; it is whether Balfour has conducted a sufficiently robust search using those terms.  Counsel for Mr. Rattie claims that a former Balfour employee, Bobby Olupona, produced to him text messages from Mr. Vaz, referring to Mr. Rattie, that were not produced by Balfour.  Id.  This is despite Balfour's supplemental response to Mr. Rattie's document requests on August 1, 2023, stating that it had produced all text messages to or from Mr. Vaz, Mr. Webb, and Mr. Rogers which referred to Mr. Rattie and which are relevant to his claims.  Id.  Balfour further asserted in the parties' discovery letters that it has searched for relevant text messages on the management witnesses' Balfour-provided phones and produced all responsive documents.  Id.

Rule 34 only requires production of relevant documents that "are in the responding party's possession, custody, or control."  Fed. R. Civ. P. 34(a)(1).  "[F]ederal courts have consistently held that documents are deemed to be within the 'possession, custody or control' for purposes of Rule 34 if the party has *actual* possession, custody or control, or has the legal right to obtain the documents on demand."  Goolsby v. Cnty. of San Diego, No. 3:17-CV-564-WQH-NLS, 2019 WL 3891128, at *4 (S.D. Cal. Aug. 19, 2019) (quoting In re Bankers Trust Co., 61 F.3d 465, 469 (6th Cir. 1995) (emphasis in original)).  "The burden of establishing control over the documents sought is on the party seeking production."  Id.  At the hearing, the Court and the parties discussed the possibility that the text messages in Mr. Olupona's possession were sent from Mr. Vaz's personal cell phone, as opposed to his Balfour-provided phone.  "While Federal courts are divided on what

United States District Court
Northern District of California

circumstances render an employee's personal device subject to the 'possession, custody, and control' of its employer, generally the plaintiff must show that personal devices were used for business purposes." Id.

Here, Mr. Rattie has failed to establish a sufficient factual record—and failed to provide any legal authority—to order a further search and production of the management witnesses' personal devices.  He has provided the Court with no evidence indicating one way or the other whether Balfour has any type of control over its employees' personal cell phones or other electronic devices.  In fact, Mr. Rattie failed to even file a copy of the text messages produced by Mr. Olupona that are the bases for his claim that Balfour's document production is incomplete.  On the other hand, Balfour has represented to the Court that it issues work phones to its management employees, and that they are expected to use these devices for work-related communications.  If counsel for Mr. Rattie believed that the management witnesses had relevant text messages on their personal phones, over which Balfour did not have "possession, custody, or control," then he had the option to issue a third-party subpoena for the production of those messages.  Evidently, he did not do so.

The request that Balfour search for and produce potentially relevant text messages concerning Mr. Rattie found on the personal phones belonging to Mr. Vaz, Mr. Webb, and Mr. Rogers is **DENIED**.  Instead, Balfour is ordered to file a declaration under oath, attesting to the fact that it has fulfilled its discovery obligations under Rule 26(b) and Rule 34 to produce all relevant text messages and electronic communications to or from the management witnesses in its "possession, custody, or control," based on the parties' previously agreed to search terms, and if there are supplemental productions that are required to ensure that this declaration is truthful, Balfour shall further produce such messages within fourteen days of this order.

### 2.    Mr. Vaz's Deposition

Mr. Rattie's request for an order requiring Balfour to produce Mr. Vaz for deposition is **DENIED WITHOUT PREJUDICE**.  After Balfour completes production of any further responsive text messages, Mr. Rattie shall determine within one week of the supplemental production, if there is one, whether he seeks to schedule a deposition of Mr. Vaz, and meet and

6

confer with Balfour to promptly schedule the deposition.  Any disputes regarding a further deposition with Mr. Vaz will be addressed through the undersigned's ordinary discovery dispute process set forth in her Civil Standing Order.

### 3. Rule 30(b)(6) Deposition and Quarterly Reports

Mr. Rattie's request for a court order requiring Balfour to produce one or more deponents for a Rule 30(b)(6) deposition is **DENIED**.  Mr. Rattie previously noticed a Rule 30(b)(6) deposition and had an opportunity to ask Ms. Sonya Roberts, the Vice-President for Human Resources, questions regarding his Rule 30(b)(6) topics when she was made available and testified in a deposition as a fact witness.  The purported reason for failing do so is unpersuasive.  Mr. Rattie's counsel did not dispute that Balfour produced documents concerning medical leave and other relevant policies and procedures.  Balfour's objections to Mr. Rattie's requests for production and the absence of the quarterly reports do not excuse his decision to forgo questioning Ms. Roberts on key human resources topics.

In addition, Mr. Rattie's late request for the production of missing quarterly reports is **DENIED**, as he has not offered any explanation of why the quarterly reports are relevant to his claims.

### 4. Attorney Client Privilege

#### a. Privilege Assertions During Deposition Testimony of Sonya Roberts

Mr. Rattie also challenges objections based on the attorney-client privilege made by Balfour's counsel at the deposition of Ms. Roberts.  ECF No. 42 at 4.  According to Mr. Rattie, his counsel "made clear to ask only about facts and not legal advice," and furthermore, "Ms. Roberts' testimony made clear that in-house counsel was functioning as providing business advice in processing Mr. Rattie's request for accommodations."  Id.

Mr. Rattie's only request to the Court is for an *in camera* review of the documents on Balfour's privilege log, which is discussed further below.  As to Balfour's privilege objections, he cites to Aetna Cas. & Sur. Co. v. Superior Ct., 153 Cal. App. 3d 467 (1984), which found that the attorney-client privilege did not apply where the attorney was merely giving business advice.  Id.

7

at 475.  Although "[t]he party claiming the [attorney-client] privilege has the burden of establishing the preliminary facts necessary to support its exercise[,]…[o]nce that party establishes facts necessary to support a prima facie claim of privilege," then the privilege is presumed to apply, and "the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." Costco Wholesale Corp. v. Super. Ct., 47 Cal. 4th 725, 733 (2009).  Balfour has established that its in-house counsel provided legal advice as to Mr. Rattie's request for an accommodation, while Mr. Rattie has pointed to no evidence in the record that indicates otherwise.

Moreover, during Ms. Roberts' deposition, counsel for Mr. Rattie simply asked her "to describe the facts that you provided in conversations" with other Balfour employees, in the presence of in-house counsel, about Mr. Rattie's request for an accommodation.  ECF No. 51-1 at 18.  It is true that the attorney-client privilege "does not shield from disclosure underlying facts that may be set out in the communication."  Caldecott v. Superior Ct., 243 Cal. App. 4th 212, 227 (2015) (citing State Farm Fire & Casualty Co. v. Superior Court, 54 Cal. App. 4th 625, 639 (1997)).  But the question was vague in the first instance, as it did not specify which conversations were being asked about, despite Ms. Roberts asking counsel immediately before this to specify what conversation(s) he was referring to in his questioning.  ECF No. 51-1 at 17.  Accordingly, the Court overrules Mr. Rattie's objections without prejudice as to his ability to renew them based on new facts concerning the role of in-house counsel during the events at issue.

### b.    Balfour's Privilege Log

Finally, Balfour's privilege log was untimely served seven days after the close of fact discovery.  Under Rule 34, a party has thirty days from service to respond to a request for production of documents.  See Fed. R. Civ. P. 34(b)(2)(A).  The Ninth Circuit has held that this 30-day time limit for responding to document requests serves as a "default guideline" for service of a privilege log or other disclosure that satisfies the requirements of Rule 26(b)(5).  See Burlington N. & Santa Fe Ry. Co. (Burlington) v. U.S. Dist. Ct. for Dist. of Mont., 408 F.3d 1142, 1149 (9th Cir. 2005); Fed. R. Civ. P. 26(b)(5)(A) ("When a party withholds information otherwise discoverable by claiming that the information is privileged . . . the party must: (i) expressly make

United States District Court
Northern District of California

the claim; and (ii) describe the nature of the documents . . .")

However, there is no "per se waiver rule that deems a privilege waived if a privilege log is not produced within Rule 34's 30-day time limit." <u>Burlington</u>, 408 F.3d at 1149.  Instead, the Court must "make a case-by-case determination" based on "the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the [C]ourt to evaluate whether each of the withheld documents is privileged…the timeliness of the objection and accompanying information about the withheld documents…the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy…or unusually hard." <u>Id.</u>  These factors are applied as part of a "holistic reasonableness analysis, intended to forestall needless waste of time and resources, as well as tactical manipulation of the rules and the discovery process." <u>Id.</u>

Here, Mr. Rattie served his document requests on February 22, 2023, meaning that under the thirty day "default" period in <u>Burlington</u>, Balfour's responses were to be served by March 24, 2023.  ECF No. 52-3.  Balfour did not serve its privilege log until August 1, 2023, over four months later, and seven days after the fact discovery cut-off.  ECF No. 52-2.  "Where a party produces its privilege log outside of the 30-day default period and after the discovery cut-off, this fact has been found to support a finding that privilege was waived." <u>LD v. United Behav. Health</u>, No. 20CV02254YGRJCS, 2022 WL 4878726, at *4 (N.D. Cal. Oct. 3, 2022); <u>Sherman v. Regents of Univ. of California</u>, No. 20-CV-06441-VKD, 2022 WL 875652, at *3 (N.D. Cal. Mar. 24, 2022) (finding that privilege was waived where the defendants failed to timely assert it "either within the 'default' period for responding to plaintiffs' documents request or at any time before the close of discovery," which meant that the defendants' "conduct [did] not comply with the requirements of Rule 26(b)(5)"); <u>Oculu, LLC v. Oculus VR, Inc.</u>, No. SACV140196DOCJPRX, 2015 WL 12720305, at *12 (C.D. Cal. May 8, 2015), <u>report and recommendation adopted</u>, No. SACV140196DOCJPRX, 2015 WL 12731919 (C.D. Cal. May 27, 2015) (finding that the second <u>Burlington</u> factor favored waiver where the plaintiff's "late disclosure of the privilege log prejudice[d]" the defendant because it was "precluded from testing the assertion of privilege through discovery.")

The late service is especially egregious given that Balfour's privilege log is only six and a half pages long, which suggests that this case is not an example of "discovery-intensive litigation" that would make "compiling a privilege log within 30 days…exceedingly difficult, even for counsel who are sophisticated, experienced, well-funded, and acting in good faith." Burlington, 408 F.3d at 1149, n.3.  On the other hand, Mr. Rattie himself did not produce his privilege log until July 25, 2023, the day fact discovery closed, "despite [Balfour's] repeated requests."  ECF No. 42 at 5.  Therefore, Balfour is similarly prejudiced and "precluded from testing the assertion of privilege through discovery."  Oculu, LLC, 2015 WL 12720305, at *12.  While Balfour has not offered a "particularly convincing explanation for its delay in producing its privilege log, a finding of waiver would be too drastic a sanction under the circumstances." LD, 2022 WL 4878726, at *5.

Accordingly, the Court declines to find that Balfour has waived its assertions of privilege and work product protection as to all the documents listed on its privilege log.  The Court also **DENIES** Mr. Rattie's request to conduct an *in camera* review of the 47 entries on the privilege log (out of a total of 66 entries) highlighted by Mr. Rattie for the Court's consideration.  ECF No. 52-2.  Instead, Balfour is ordered to serve a revised privilege log within fourteen days of this Order that complies with all the logging methods identified in the undesigned Civil Standing Order.  If Mr. Rattie continues to have objections to Balfour's withholding of certain documents based on privilege, the parties are to meet and confer in accordance with the Civil Standing Order prior to bringing any dispute to the Court for resolution.

**IT IS SO ORDERED.**

Dated: 8/25/2023

_____
LISA J. CISNEROS
United States Magistrate Judge

United States District Court
Northern District of California