UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JON-PIERRE RATTIE,<br><br>       Plaintiff,<br><br>   v.<br><br>BALFOUR BEATTY<br>INFRASTRUCTURE, INC.,<br><br>       Defendant. | Case No. 22-cv-05061-RS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT** |

**I. INTRODUCTION**

Jon-Pierre Rattie relocated from California to Texas to obtain treatment for his Common Variable Immunodeficiency (CVID) in early 2021. He did so while working as a Testing and Commissioning Manager for Balfour Beatty Infrastructure, Inc. on the California-based Peninsula Corridor Electrification Project, which aimed to electrify passenger track between San Jose and San Francisco. In early 2022, Balfour requested Rattie's physical return to its California office and to the field. Rattie filed accommodation paperwork seeking the ability to continue working fully remotely, and Balfour later placed Rattie on paid leave for alleged violations of its confidentiality policies. Rattie now brings several causes of action against Balfour, including an interference claim under the California Family Rights Act (CFRA) and claims for failure to engage in the interactive process, failure to provide reasonable accommodation, harassment, and retaliation under the Fair Employment and Housing Act (FEHA). The parties have filed cross-motions for summary judgment on Rattie's interactive process cause of action. Balfour also seeks summary judgment on Rattie's remaining causes of action. For the reasons explained below, Balfour's

motion for summary judgment is granted in part and denied in part, and Rattie's motion for summary judgment is denied.

## II. BACKGROUND

Rattie is currently employed as a Testing and Commissioning Manager for Balfour. Balfour is a general contractor and "design build firm" that participates in both public and private sector projects, including infrastructure projects, across the country. Declaration of Peter Webb ¶ 2 (Oct. 10, 2023) ("Webb Decl."). Balfour hired Rattie in August 2018 on a major train electrification endeavor known as the Peninsula Corridor Electrification Project (the "Project"). *See* Declaration of Jon-Pierre Rattie ¶ 2 (Oct. 11, 2023) ("Rattie Decl."). The following year, Rattie was diagnosed with CVID. *See id.* ¶ 4; Deposition of Jon-Pierre Rattie at 62–64 (June 14, 2023) ("6/14 Rattie Dep."). People with CVID have weakened immune systems that can make them particularly susceptible to infection and, therefore, require frequent specialized infusions to supplement their immune systems. *See* Dkt. 66, at 3; Rattie Decl. ¶ 4. Rattie began working remotely in March 2020 due to the Covid-19 pandemic. While working remotely, Rattie received medical advice that he should continue to do so because of his CVID. *See* Rattie Decl. ¶ 6. Rattie relocated to Texas to receive treatment in early 2021. Deposition of Lorie Holte at 37 (July 19, 2023) ("Holte Dep."); 6/14 Rattie Dep. at 257. Rattie was still working remotely in late February 2022 when Balfour Project Manager Lorie Holte told him he would be asked to return to in-person work. Holte Dep. at 69, 71.

In mid-to-late February 2022, Balfour attempted to combat ballooning costs and delays relating to the Project and "steer [the Project] towards substantial completion" by bringing in three experienced rail employees: Peter Webb, Michael Vaz, and Mathew Brassington. *See* Holte Decl. ¶¶ 7, 9. These new managers found "certain responsibilities of [Rattie's] position were not being met," and that there were deficiencies relating to testing and commissioning for the Project. Webb Decl. ¶ 15; Declaration of Michael Vaz ¶ 8 (Oct. 11, 2023) ("Vaz Decl."). For instance, "tests were being run without test procedures in place." Vaz Decl. ¶ 8. They communicated these

deficiencies to Rattie. *See, e.g.*, Webb Decl. ¶ 16; *id.*, Ex. B.[1] At this point, Rattie's new managers were not aware he had a medical condition requiring that he work remotely. *See, e.g.*, Webb Decl. ¶ 18 (explaining Webb did not learn of Rattie's need to work remotely until April 8, 2022); Vaz Decl. ¶ 15 (same). On April 1, 2022, in a letter, Holte told Rattie to return to the Project in person. Holte Dep., Ex. 32. This letter noted Balfour was "calling employees back to the office" to ensure the success of the Project. *Id.* Several days later, on April 5, Rattie requested accommodation forms from Project Human Resources Manager Juanita Velasquez, and Velasquez sent Rattie those forms several days later. Rattie Decl. ¶¶ 9–10. On May 3, Rattie submitted his accommodation forms and Human Resources acknowledged receipt. Declaration of Sonya Roberts ¶ 6 (Oct. 11, 2023) ("Roberts Decl."); Rattie Decl. ¶¶ 12–13.

On May 4, 2022, after submitting his accommodation paperwork, Rattie copied his attorney on an email to representatives on the Peninsula Corridor Joint Power Board (JPB) in which he wrote that he was receiving insufficient support from Balfour for Testing and Commissioning—Rattie's team—to be able to report additional information to the JPB.[2] Deposition of Jon-Pierre Rattie at 393–94 (June 15, 2023) ("6/15 Rattie Dep."). Then, approximately nine days after Rattie submitted his accommodation forms, a client representative informed Balfour that Rattie had recorded a virtual meeting with the JPB. *Id.* at 396–97. Balfour placed Rattie on paid administrative leave the following day, terminated his network access, and began investigating whether Rattie had violated Balfour's confidentiality policies. *See* Roberts Decl. ¶ 9; 6/15 Rattie Dep. at 402–04; Rattie Decl. ¶ 28. The results of this investigation have yet to be revealed. Between May 2, 2022, and July 20, 2022, Balfour searched for available positions within the company to see whether there were any vacancies that permitted remote work. Deposition of Sonya Roberts at 87 (July 20, 2023). It found none. *Id.* at 93–94.

---

[1] Rattie does not specifically dispute Balfour's claim that the new managers identified deficiencies in his performance and then communicated those deficiencies to him. Rattie does claim he "never received any performance evaluations calling into question his abilities." Dkt. 69, at 15.

[2] The JPB is the entity that owns the railroad for which Balfour won the electrification contract. Webb Decl. ¶ 6.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT
CASE NO. 22-cv-05061-RS
3

Balfour and Rattie, through counsel, spent the months following Rattie's placement on leave discussing the possibility of Rattie leaving Balfour and a severance package. *See* 6/15 Rattie Dep. at 411–12. Balfour continued paying Rattie his salary through August 2022. *Id.* at 413. On August 26, 2022, Rattie applied for unpaid Family and Medical Leave Act (FMLA) leave and for disability benefits with Balfour's third-party claims administrator. Roberts Decl. ¶ 10. The claims administrator approved Rattie's leave request effective September 1, 2022, and Balfour then transitioned Rattie to unpaid leave status. *Id.* ¶¶ 12–13. Rattie filed his Complaint in this action several days after Balfour transitioned him to unpaid leave. Rattie remains on unpaid FLMA leave and employed by Balfour. *Id.*

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (internal quotation marks omitted). If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which it bears the burden of proof at trial. *Id.* at 322–23.

To preclude the entry of summary judgment, the non-moving party must bring forth material facts—that is, "facts that might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citation omitted). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*,

475 U.S. 574, 586 (1986). It is the duty of the trial court to "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence." *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson*, 477 U.S. at 255). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," however, "there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

## IV. DISCUSSION

### A. California Family Rights Act (CFRA) & Harassment

Rattie indicates he is withdrawing his CFRA claim as well as his FEHA harassment claim. *See* Dkt. 69, at 5. Summary judgment will be granted to Balfour on these claims.

### B. Failure to Engage in the Interactive Process

Both parties seek summary judgment on Rattie's claim that Balfour failed to engage in the interactive process under FEHA. FEHA, as relevant here, makes it unlawful for an employer "to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." Cal. Gov't Code § 12940(n). "The 'interactive process' required by the FEHA is an informal process with the employee or the employee's representative, to attempt to identify a reasonable accommodation that will enable the employee to perform the job effectively." *Scotch v. Art Inst. of Cal.*, 173 Cal. App. 4th 986, 1013 (2009) (citation omitted). "Both the employer and the employee are responsible for participating in the interactive process." *Soria v. Univision Radio L.A., Inc.*, 5 Cal. App. 5th 570, 600 (2016).

A plaintiff bringing a claim alleging failure to engage in the interactive process must also show a reasonable accommodation was available. *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 379 (2015).[3] A "reasonable accommodation" refers to a "modification or adjustment to

---

[3] Rattie cites *Wysinger v. Automobile Club of Southern California*, 157 Cal. App. 4th 413 (2007), for the proposition that California courts are "not settled" regarding whether a plaintiff must establish a reasonable accommodation was available at the time the interactive process should

ORDER ON MOTIONS FOR SUMMARY JUDGMENT
CASE NO. 22-cv-05061-RS

5

the workplace that enables a disabled employee to perform the essential functions of the job held or desired." *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 798 (N.D. Cal. 2015) (citation omitted). Essential functions are "the fundamental job duties of the employment position the individual with a disability holds or desires." Cal. Gov't Code § 12926(f).

Balfour seeks summary judgment on Rattie's interactive process claim primarily on the grounds that Rattie cannot show working entirely remotely in his existing position was an available reasonable accommodation. Balfour claims Rattie cannot carry out essential functions of his job as a Testing and Commissioning Manager while working fully remotely, and, therefore, the sole accommodation Rattie seeks is not a reasonable one. It cites several pieces of evidence in support of this argument, including an impending testing milestone requiring in-person work, Rattie's inability effectively to supervise Bobby Olupona (an employee Rattie managed) while working remotely, and Rattie's managers' belief that his continued remote status was "untenable." Dkt. 65, at 19–20.

On this record, and drawing all justifiable inferences in favor of Rattie, Balfour has not established the absence of a genuine dispute of material fact regarding whether Rattie could carry out the essential functions of his work while working remotely. True, it was the judgment of Rattie's managers that in-person attendance was an essential function of his role. *See* Dkt. 65, at 18; *see also* Cal. Gov't Code § 12926(f)(2) (describing evidence relevant to determining whether a job function is essential). That said, a trier of fact could conclude remote work was an available reasonable accommodation in part because Rattie had worked remotely for the preceding two years. There are genuine disputes as to whether there was either a conclusive shift in Project phases that rendered Rattie incapable of performing essential functions of his position remotely or whether Rattie's job performance was actually deficient leading up to and in early 2022. Indeed,

---

have occurred. *See* Dkt. 66, at 8. Since *Wysinger*, however, several California appellate courts have appeared to reach consensus that such a showing is required. *See, e.g., Nadaf-Rahrov v. Neiman Marcus Grp.*, 166 Cal. App. 4th 952, 982–83 (2008); *Scotch*, 173 Cal. App. 4th at 1016-18; *see also Capote v. CSK Auto, Inc.*, No. 12-cv-2958, 2014 WL1614340, at *5 (N.D. Cal. Apr. 22, 2014) (applying this consensus view).

ORDER ON MOTIONS FOR SUMMARY JUDGMENT
CASE NO. 22-cv-05061-RS

6

Balfour's apparent contention that in-person attendance was *always* an essential function of Rattie's position, *see* Dkt. 65, at 18, is difficult to square with the two years Rattie spent working remotely.[4] Balfour does not weave together its potentially inconsistent arguments that (1) Rattie's position always required in-person work but that (2) the Project changed such that Balfour could no longer afford Rattie the same flexibility it previously offered such that no genuine dispute exists about whether in-person work, by early 2022, was an essential function of Rattie's position.

Nor has Balfour shown a lack of genuine dispute over whether it engaged with the interactive process with Rattie once he requested accommodations. The duty to engage in the interactive process begins "[o]nce an employer becomes aware of the need for accommodation." *Humphrey v. Memorial Hosps. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001). Liability under an interactive process claim turns on which party is responsible for any breakdown in communication that occurs during the interactive process. *See Scotch*, 173 Cal. App. 4th at 1013. Balfour claims it began negotiating a severance agreement with Rattie's counsel shortly after Rattie sought accommodations and then was placed on leave for potentially violating Balfour's confidentiality policies. The mere fact that the parties engaged in severance discussions is insufficient for Balfour to prevail on summary judgment.[5] Rattie argues he never received a formal response to his request for accommodations, and Balfour does not contest this. It is therefore somewhat of an open question what, if any, communication occurred between the parties after Rattie requested permission to work fully remotely regarding that request. Balfour's cross-motion for summary

---

[4] Balfour claims that "Plaintiff, as the **only** T&C Manager on the Project, was needed to fulfill the essential functions of his role, including witnessing equipment and systems tests, interfacing with other on-site workers, ensuring the fulfillment of pre-test checklists, and certifying with his own signature that tests were run according to procedure, among other functions." Dkt. 70, at 19 (emphasis in original). These functions, Balfour argues, are in Rattie's job description. *See id.*

[5] Balfour, at oral argument, pointed to *Goos v. Shell Oil Co.* as supplemental authority for the proposition that an employee is responsible for a breakdown in the interactive process when the parties engage in severance discussions. *See* 451 F. App'x 700 (9th Cir. 2011). Notwithstanding the fact *Goos* is an unpublished, nonprecedential opinion, it does not stand for this proposition. *Goos* simply acknowledged an employee's request for severance as one among several factors that caused the interactive process to break down given the other facts of that case. *See id.* at 702–03.

judgment on Rattie's interactive process claim is denied.

For many of the reasons explained above, Rattie's cross-motion for summary judgment on his interactive process claim also fails. Most crucially, there is a genuine dispute of fact regarding whether in-person work was an essential function of Rattie's position and whether full-time remote work was an available reasonable accommodation. The evidence presented at summary judgment also shows Balfour investigated whether any job vacancies company-wide permitted remote work and found none did. *See, e.g.*, Roberts Decl. ¶ 8. Balfour was not obligated to create a new, fully-remote position to accommodate Rattie. *See Raine v. City of Burbank*, 135 Cal. App. 4th 1215, 1226 (2006). Rattie does not point to any employee with job responsibilities similar to his own whom Balfour permitted to work fully remotely. Balfour, on the other hand, presents evidence that at least one other employee, Systems Integration Manager Jeff Rogers, had to ramp up his in-person field work as the Project approached the upcoming milestone. *See* Dkt. 65, at 10 n.7. There is also a genuine dispute, detailed above, regarding whether Balfour or Rattie was responsible for any breakdown in the interactive process. Rattie has not come close to establishing entitlement to summary judgment on his interactive process claim, and his cross-motion for summary judgment is denied.

### C. Reasonable Accommodation

Balfour also seeks summary judgment on Rattie's reasonable accommodation claim under FEHA.[6] California Government Code § 12940(m)(1) requires an employer to "make reasonable accommodation for the known physical or mental disability of an . . . employee." An employer is not required to provide every requested accommodation, but rather must provide only *reasonable* accommodations. *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 228 (1999). Further, a plaintiff must show she is qualified to perform the job with reasonable accommodations, as FEHA limits its "protective scope to those employees with a disability who can perform the essential duties of the employment position with reasonable accommodation." *Green v. California*, 42 Cal.

---

[6] There is some overlap in the analysis of this claim and the preceding interactive process claim.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT
CASE NO. 22-cv-05061-RS
8

4th 254, 264 (2007). Employers are not required to create "light-duty positions" to accommodate employees otherwise incapable of performing the essential functions of a position. *Raine*, 135 Cal. App. 4th at 1224.

In order to obtain summary judgment on this claim, Balfour, as the moving party, must demonstrate "(1) reasonable accommodation was offered and refused; (2) there simply was no vacant position within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation; or (3) the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith." *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 262–63 (2000). As before, there is a genuine dispute regarding whether Rattie was capable of performing his Testing and Commissioning Manager job responsibilities while working fully remotely. Balfour has not demonstrated its entitlement to summary judgment under any of the potential avenues identified in *Jensen*. Accordingly, Balfour's motion for summary judgment on Rattie's reasonable accommodation claim is denied.

**D. Retaliation**

Balfour also moves for summary judgment on Rattie's FEHA retaliation claim. It makes three arguments in support of summary judgment: (1) placing Rattie on paid administrative leave did not constitute an adverse employment action, (2) there was no causal connection between Rattie's request for accommodation and his being placed on leave, and (3) it had a legitimate, nonretaliatory reason for placing Rattie on leave.

An employer moving for summary judgment on a FEHA claim bears the initial burden of showing that either the plaintiff cannot make out one of the elements of the claim or the employer had a legitimate, nondiscriminatory reason to dismiss the plaintiff. *See Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011). The elements of a *prima facie* case of retaliation are whether the plaintiff engaged in a protected activity, the employer took an adverse employment action, and there was a causal link between the plaintiff's engagement in the

protected activity and the adverse employment action. *See Loggins v. Kaiser Permanente Int'l*, 151 Cal. App. 4th 1102, 1108–09 (2007). Once a *prima facie* case of retaliation has been made, the employer has the burden to show a nonretaliatory reason for the employment action. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005). If the employer meets this burden, the employee reshoulders the burden to show intentional retaliation or that the stated nonretaliatory reason is pretextual. *Id.*; *Dawson v. Entek Int'l*, 630 F.3d 928, 934–35 (9th Cir. 2011) (citation omitted).

Balfour first argues Rattie cannot make out a *prima facie* case of retaliation because being placed on paid administrative leave does not constitute an adverse employment action. This argument does not persuade. An adverse employment action is one that falls within the "entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement in his or her career." *Yanowitz*, 36 Cal. 4th at 1053–54. In other words, *Yanowitz* warned courts against taking an "unduly narrow view" of what counts as an adverse employment action. *Id.* at 1052. A reasonable juror could find Rattie suffered an adverse employment action when Balfour placed him on paid administrative leave and terminated his network access. The Ninth Circuit, in the First Amendment retaliation context, has held placement on paid administrative leave can constitute an adverse employment action. *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1078 (9th Cir. 2013); *see also Franks v. City of Santa Ana*, No. SACV 15-108, 2015 WL 13919157, at *4 (C.D. Cal. Apr. 27, 2015) (applying *Dahlia* in Title VII context). The fact that Balfour terminated Rattie's network access when it placed him on leave strengthens Rattie's argument that he suffered an adverse employment action. *See Leland v. City & County of S.F.*, 576 F. Supp. 2d 1079, 1097–98 (N.D. Cal. 2008) (finding shutting employee out of work meetings constituted an adverse employment action). Balfour has not established a lack of genuine dispute on this issue.

Next, Balfour argues Rattie cannot establish the requisite causal link between requesting accommodation and being placed on leave. Rattie argues this causal link is sufficiently established via inference based on the temporal proximity between his filing for accommodations and his

ORDER ON MOTIONS FOR SUMMARY JUDGMENT
CASE NO. 22-cv-05061-RS

10

being placed on leave on March 13, 2022. *See* Dkt. 69, at 17–18 (noting the passage of only 38 days between these two events). Balfour attempts to overcome Rattie's temporal proximity argument by pointing to an intervening event—Rattie's recording of the JPB meeting—that it claims disrupts any claimed causal link between protected activity and adverse action. Notably, it was a JPB representative and *not* Balfour that initially complained to Balfour about Rattie's recording. Webb Decl. ¶ 21. Balfour, however, never notified Rattie whether it found he recorded the meeting intentionally or actually violated its confidentiality policies. *Id.* at 19. A reasonable trier of fact could find Rattie has established the requisite causal link between requesting accommodation and being placed on leave.

Finally, Balfour contends Rattie cannot rebut its legitimate reason (Rattie's confidentiality policy violations) for placing Rattie on leave. As before, Balfour never communicated any findings related to its investigation into whether Rattie violated its confidentiality rules to Rattie. A reasonable juror, on these facts, could find Balfour acted pretextually in placing Rattie on leave. Summary judgment on Rattie's retaliation claim is denied.

### E. Punitive Damages

To win punitive damages at summary judgment, a plaintiff must show malice, oppression, or fraud by clear and convincing evidence. *Basich v. Allstate Ins. Co.*, 87 Cal. App. 4th 1112, 1121 (2001); *see* Cal. Civ. Code § 3294(a). Rattie does not appear to dispute the "clear and convincing evidence" standard applies. A corporation will be liable for damages under § 3294(a) only where an officer, director, or managing agent of the corporation had "advance knowledge of the unfitness of the employee," employed a person with a "conscious disregard of the rights or safety of others," "authorized or ratified the wrongful conduct," or was personally responsible for oppression, fraud, or malice. Cal. Civ. Code § 3294(b). Since several of Rattie's claims survive summary judgment, it would be premature, at this stage, to grant summary judgment on his punitive damages claim. Balfour's motion for summary judgment on this claim is therefore denied, without prejudice to being renewed at trial.

## V. CONCLUSION

Balfour's cross-motion for summary judgment is granted as to Rattie's CFRA and harassment claims. Balfour's cross-motion is denied as to Rattie's remaining claims. Rattie's motion for summary judgment on his interactive process claim is denied.

The dates set for the pretrial conference and trial in this matter, January 17 and January 29, 2024, respectively, are vacated. A trial-setting conference will be held on January 11, 2024, at 10:00 am, in San Francisco, Courtroom 3, 17th Floor.

**IT IS SO ORDERED**.

Dated: November 22, 2023

_____
RICHARD SEEBORG
Chief United States District Judge